UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TRINIDAD LARA URBINA,<br><br>                    Plaintiff,<br><br>     v.<br><br>GAIL CARSON, RN; PETER A.<br>ORNER; JOSEPH CALLANAN, JR.;<br>and DOES 1 through 50,<br><br>                    Defendants. | 1:07-CV-00153 OWW NEW (TAG)<br><br>**MEMORANDUM DECISION GRANTING<br>IN PART AND DENYING IN PART<br>DEFENDANT'S CARSON MOTION TO<br>DISMISS AND MOTION TO STRIKE<br>(DOC. 17); DEFENDANT'S<br>CALLANAN MOTION TO DISMISS<br>(DOC. 19) AND MOTION TO STRIKE<br>(DOC. 20); AND DEFENDANT'S<br>ORNER MOTION TO STRIKE (DOC.<br>21) AND MOTION TO DISMISS<br>(DOC. 22)** |

## 1.   <u>INTRODUCTION</u>

Plaintiff brings this suit against Defendants alleging

1. violation of Cal. Civ. Code § 56.10(a),

2. violation of Cal. Civ. Code § 56.36(b),

3. Violation of 42 U.S.C. § 1983, and

4. violation of 42 U.S.C. § 1985(2) and § 1985(3).

Plaintiffs claims arise from the alleged wrongful disclosure of private medical information in a pending federal civil rights action, *Lara-Urbina v. County of Kern, et. al.*, Case No. 05-cv-1056 OWW WMW ("*Urbina I*").

In *Urbina I* Plaintiff brought a 42 U.S.C. § 1983 claim alleging a violation of his constitutional rights resulting from

1

alleged excessive use of force during his arrest.  Plaintiff alleges that Defendants in this case engaged in ex parte communications about and accepted his medical information without his consent in violation of his right to medical privacy. Defendants move to dismiss Plaintiff's suit for failure to state a claim and move to strike Plaintiff's first and second causes of action.

## 2.  PROCEDURAL BACKGROUND

On February 19, 2007, Plaintiff filed his first amended complaint ("FAC"). (Doc. 8, FAC.)

On March 7, 2007 Defendant Callanan filed his motion to dismiss Plaintiff's FAC.  (Doc. 19, Motion to Dismiss First Amended Complaint.)  On March 7, 2007 Callanan filed a special motion to strike Plaintiff's FAC.  (Doc. 20, Motion to Strike.)

On February 28, 2007 Defendant Carson also moved to dismiss Plaintiff's FAC and, in the alternative, filed a special motion to strike.  (Doc. 17, Motion to Dismiss First Amended Complaint and Special Motion to Strike.)

On March 12, 2007, Defendant Orner filed both a motion to strike and a motion to dismiss Plaintiff's FAC.  (Doc. 21, Motion to Strike; Doc. 22, Motion to Dismiss for Failure to State a Claim.)

On April 9, 2007 Plaintiff filed an Opposition to all motions.  (Doc. 28, Opposition.)

On April 10, 2007, Defendant Carson filed his reply.  (Doc. 29, Reply by Carson.)  On April 11, 2007 Defendant Callanan filed his reply.  (Doc. 30, Reply by Callanan.)  On April 12, 2007

Defendant Orner filed his reply to Plaintiff's opposition.   (Doc. 31, Reply by Orner.)

### 3.   FACTUAL BACKGROUND

Defendant Gail Carson, RN ("Carson") is a registered nurse licensed under the laws of the state of California.  (Doc. 8, FAC, ¶ 4.)

Defendant Peter A. Orner, MD ("Orner") is a medical doctor licensed under the laws of the state of California.  (*Id.* at ¶ 5.)

Defendant Joseph Callanan, Jr. ("Callanan") is a resident of the state of California.  (*Id.* at ¶ 6.)  He was retained as a police procedures and use of force expert by the County of Kern in the underlying lawsuit *Urbina I*.

Plaintiff alleges that on August 15, 2003 "a police officer... Detective Chris Jackson ("Officer Jackson"), struck [him] repeatedly in his ribs" during Plaintiff's arrest.  (Doc. 8, FAC, ¶ 10.)  Plaintiff claims Officer Jackson hit Plaintiff with the butt of his gun, fracturing Plaintiff's rib and a collapsing his lung.  (Id.)  Plaintiff has filed a separate lawsuit for redress of these injuries that is currently pending before this court.

Defendant Carson, a registered nurse at the Kern County Jail, treated and evaluated at the jail Plaintiff's medical condition and injuries sustained during his arrest.  (Id. at ¶ 11.)  Plaintiff claims that Carson created a medical report ("Medical Screening Form") on August 15, 2003 reflecting her evaluation of Plaintiff's condition.  (Id. at ¶ 11.)  This report

**3**

included facts pertaining to Plaintiff's medical condition, including his complaints of pain and difficulty breathing. (*Id.* at ¶ 11.) Plaintiff argues that Nurse Carson is a material witness to the events that give rise to the lawsuit in *Urbina I.* However, Plaintiff admits that he subpoenaed her Medical Screening Form and provided it to the Defense during the discovery stage of *Urbina I.* Defendant also admits his claims of personal injury put in issue Plaintiff's physical and medical condition.

According to Plaintiff, Defendant Orner and Defendant Callanan consented to be retained as experts to testify on behalf of the defendants in *Urbina I*. (*Id.* at ¶ 13.) However, Plaintiff alleges that Orner and Callanan realized that Carson's August 15, 2003 medical record was damaging to defendants position in *Urbina I.* (*Id.*) Plaintiff claims that Orner and Callanan entered into a conspiracy to induce Carson to change or alter her findings in the Medical Screening Form so as to exonerate, rather than incriminate, the defendant police officers in *Urbina I.* (*Id.*)

In support of these allegations, Plaintiff claims that on July 21, 2006 Callanan interviewed Carson and obtained from her, information regarding Plaintiff's medical condition at the time he was arrested. (*Id.*) This interview occurred without notice to Plaintiff and without his consent or authorization. (*Id.*)

Plaintiff also claims that on July 26, 2006 Dr. Orner conducted a telephone interview with Carson in which he also obtained information and details about Plaintiff's medical condition at the time of his arrest. (*Id.*)

**4**

According to Plaintiff, the disclosure of his medical information without his consent violates Cal. Civ. Code § 56.10 (a) and the Health Insurance Portability and Accountability Act of 1996 ("HIPPA").  (*Id.*)

Based on these allegations Plaintiff brings the following causes of action:

1.   Conspiracy to Violate Cal. Civ. Code § 56.10(a). (*Id.*, ¶ 15.)

2.   Wrongful Disclosure Cal Civ. Code § 56.36(b). (*Id.*, ¶ 16.)

3.   Violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment.

4.   Violation of 42 U.S.C. § 1985(2) & (3).  Plaintiff alleges that Defendants conspired for the purposes of impending, hindering, obstructing or defeating the due course of justice in Plaintiff's civil lawsuit, *Urbina I*, with the intent to injure plaintiff in his property for attempting to enforce his right to equal protection of the laws.

### 4.   MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  However, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are disfavored and rarely granted.  The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A.   **Plaintiff has Failed to State a Claim Under 42 U.S.C. § 1983.**

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003)(quoting 42 U.S.C. § 1983). "The rights guaranteed by section 1983 are 'liberally and beneficently construed.'" *Id.* (quoting *Dennis v. Higgins*, 498 U.S. 439, 443 (1991). Pursuant to 42 U.S.C. § 1983, Plaintiff may bring a civil action for deprivation of rights under the following circumstances:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For

6

the purposes of this section, any Act of Congress
applicable exclusively to the District of Columbia
shall be considered to be a statute of the District
of Columbia.

Therefore, to state a claim for relief under 42 U.S.C. §
1983, a plaintiff must establish that (1) they were deprived of a
right secured by the Constitution or laws of the United States,
and (2) the alleged deprivation was committed under color of
state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.
40, 49-50 (1999).

The first issue is whether Plaintiff sufficiently alleges a
constitutional deprivation.  Plaintiff argues that he was
deprived of his Fourth and Fourteenth Amendment rights.[1]

i.   4th Amendment Illegal Search and Seizure

Plaintiff in alleging a violation of 42 U.S.C. § 1983, states
in his complaint "Defendants... acting under color of state law
[violated] Plaintiff's rights as protected by the Fourth
Amendment."  It is unclear from the complaint what specific acts
by Defendants were made under the color of law or how Defendants
were in violation of the Fourth Amendment.

---

[1] Plaintiff also argues that Defendants are in violation of
Federal law because their conduct violates the "privacy rule"
under the HIPPA 45 C.F.R. §§ 160.103, 164.502.  He states that
Carson's telephone disclosures to Orner and Callanan were not
authorized by HIPPA because Carson did not have Plaintiff's
consent.  However, Plaintiff also recognizes in his opposition
that there is no private right of action for damages under HIPAA
but discusses the statute to "demonstrate that Plaintiff's claims
are not barred by California's litigation privilege and that
Plaintiff has stated a cause of action under 42 U.S.C. § 1983."
(Doc. 28, Opposition, n. 3.)  Plaintiff offers no support for the
proposition that a violation of HIPAA's medical privacy rule
implicates a recognized constitutional right for purposes of 42
U.S.C. § 1983.

7

1    Under the Fourth Amendment the right of the people to be
2    secure in their persons, houses, and effects, against
3    unreasonable searches and seizures, shall not be violated.   U.S.
4    Const. amend. IV.; *Menotti v. City of Seattle,* 409 F. 3d 1113,
5    1152 (9th Cir. 2005).   The Supreme Court has held that "in the
6    ordinary case, seizures of personal property are unreasonable
7    within the meaning of the Fourth Amendment, without more, unless
8    accomplished pursuant to a judicial warrant issued by a neutral
9    and detached magistrate after finding probable cause."   *Id.*
10   However, when faced with special law enforcement needs, the
11   Supreme Court has found that certain general, or individual,
12   circumstances may render a warrantless search or seizure
13   reasonable.   *Id.*

14       Plaintiff alleges that Defendants used the color of authority
15   of the City of Shafter and the County of Kern, two local
16   government entities, in causing the wrongful disclosure and
17   dissemination of Plaintiff's confidential medical information.
18   Plaintiff claims that Defendant Carson provided Defendants
19   Callanan and Orner with Plaintiff's medical information without
20   Plaintiff's consent.   Orner and Callanan, private citizens, who
21   were retained as expert witnesses for the defense in *Urbina I*,
22   "knew that Carson's report on Plaintiff's medical condition was
23   damaging to defendants."   According to Plaintiff Callanan and
24   Orner induced Carson to alter her findings of Plaintiff's post
25   arrest medical examination.

26       Plaintiff does not allege any facts suggesting there has been
27   an unreasonable search or seizure by Defendants.   To the
28   contrary, Plaintiff admits that Plaintiff himself subpoenaed the

**8**

Medical Screening Form and provided it to Defendants as part of

Plaintiff's discovery obligations.  Plaintiff cannot credibly

suggest that he did not know that his medical records would be

subject to scrutiny and discovery.  He impliedly consented to the

use of his medical records in this case.  These records are

highly relevant to the nature and extent of his injuries and

damage claims. Plaintiff offers no law or argument that he had a

legitimate expectation of privacy in the medical information that

he voluntarily provided to the defense in this lawsuit; that he

was legally required to provide; and that he put his medical

conditions and the extent of his injuries in issue by the

allegations of his complaint.  Plaintiff also does not address

this issue in his opposition.  Plaintiff only alleges that Carson

spoke to Callanan and Orner during the course of the *Urbina I*

litigation about Plaintiff's medical screening and medical

condition.  This is insufficient to show a Fourth Amendment

violation.  Neither does Plaintiff allege that either private

defendants acted under the color of state law.

Plaintiff contests the nature of the information shared

during the Defendants' ex parte conversations.  The Ninth Circuit

has long applied *Whalen v. Roe,* 429 U.S. 589, 599-600, 97 S. Ct.

869 (1977) and its progeny in holding that individuals have a

constitutionally protected interest in avoiding disclosure of

personal matters including medical information.  *Tucson Woman's*

*Clinic v. Eden,* 379 F.3d 531, 551 (9th Cir. 2004);  *see also,*

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260,

1269 (9th Cir. 1998)(the constitutionally protected privacy

interest in avoiding disclosure of personal matters clearly

encompasses medical information and its confidentiality.); *Yin v. California,* 95 F.3d 864, 870 (9th Cir. 1996)(noting that individuals have a right protected under the Due Process Clause of the Fifth or Fourteenth Amendments in the privacy of personal medical information and records.)

Plaintiff's complaint does not specifically describe any of the information that was shared.  For example, Plaintiff argues in his papers that he "did give permission to share 'certain types of medical information' but not 'the kind that was actually shared.'"  Plaintiff does not identify what medical information was allegedly shared without his permission.  Defendants rejoin that Plaintiff voluntarily disseminated his medical information to Defense counsel.  Without further detail it cannot be determined whether Plaintiff actually has an expectation of privacy in the "medical information" or whether any of the *Whalen* line of cases apply to Plaintiff. Plaintiff refers to no legal authority that constrains a party's expert from communicating with an adverse party's percipient witnesses.  Plaintiff has failed to allege an unlawful search and seizure in violation of his Fourth Amendment rights.

The motion to dismiss the Fourth Amendment claim is GRANTED WITH LEAVE TO AMEND.

ii.   <u>14th Amendment Denial of Due Process</u>

Plaintiff claims a denial of Due Process in his § 1983 claim. The complaint is unclear whether Plaintiff alleges a denial of substantive due process rights, procedural due process rights, or both.

1    The procedural due process component of the Fourteenth
2  Amendment protects individuals against the deprivation of liberty
3  or property by the government without due process.  *Portman v.*
4  *County of Santa Clara* 995 F.2d 898, 904 (9th Cir. 1993 ).  "A §
5  1983 claim based upon procedural due process has three elements:
6  (1) a liberty or property interest protected by the Constitution;
7  (2) a deprivation of the interest by the government; (3) lack of
8  process.  The Due Process Clause does not create substantive
9  rights in property the property rights are defined by reference
10 to state law." *Id.*

11   "Substantive due process protects individuals from arbitrary
12 deprivation of their liberty by government." *Brittain v. Hansen*,
13 451 F.3d 982, 991 (9th Cir. 2006).  "The United States Supreme
14 Court has repeatedly spoken of the cognizable level of executive
15 abuse of power as that which shocks the conscience." *Id.*  "Only
16 the most egregious official conduct can be said to be arbitrary
17 in a constitutional sense." *Id.*  "Such conduct can be shown by
18 'conduct intended to injure in some way unjustifiable by any
19 government interest.'" *Id.*  "In order to establish a
20 constitutional violation based on substantive due process, a
21 plaintiff must show both a deprivation of liberty and conscience
22 shocking behavior by the government." *Id.*

23   The dispute here involves the scope of the medical
24 information that was shared among Defendants' experts in
25 discovery and investigation by the experts to prepare for trial.
26 Plaintiff claims that the information shared went beyond the
27 scope of the Medical Screening Form and was, therefore,
28 confidential.  Defendants argue that Plaintiff had already

voluntarily disclosed and disseminated his medical information to defense attorneys in *Urbina I*, after Plaintiff subpoenaed it from the medical custodian of records.  According to Defendants, any ex parte conversation concerned only the information on the Medical Screening Form.  Defendants further argue that Plaintiff offers no law to show that he is entitled to relief when a percipient witness shares Plaintiff's medical information with defense experts during ongoing litigation.  Plaintiff does not address this issue in his opposition and provides no law that supports his position.

Plaintiff has not alleged a protected property interest in the medical records that he voluntarily and necessarily disclosed to the defense.  Plaintiff does not allege a deprivation of a protected interest by the government, or denial of due process. Plaintiff also does not allege that Defendants' conduct shocks the conscience.  It is entirely expectable that all Plaintiff's medical information about his physical and mental condition, treatment, diagnosis, prognosis and recovery has as a matter of law to be fully disclosed to Defendants for the litigation. Without more, Plaintiff has not sufficiently alleged a Fourteenth Amendment Due Process violation by any Defendant.

iii. <u>State Action</u>

Even if Plaintiff had sufficiently alleged a constitutional deprivation under the Fourth or Fourteenth Amendments, Plaintiff would still have to show that Defendants acted under the color of state law.

To act under color of state law requires that the defendant in a § 1983 action has exercised power "possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).  If defendants' conduct satisfies the state action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under § 1983."  *Id.*  In such circumstances, defendant's alleged infringement of plaintiff's federal rights is "fairly attributable to the State."  *Id.*

To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor.  *Id.*; *See also, Sullivan*, 526 U.S. at 50 (1999).  It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.  *Atkins*, 487 U.S. at 49.  Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.  *Id.*

Neither defendant is a public employee.  Plaintiff identifies no conduct by Defendants that constitutes state action.  The private Defendants were retained as testifying experts who were to analyze Plaintiff's conduct, medical condition and treatment to determine the effects of interaction between Plaintiff and law enforcement and to analyze the credibility of his damage claims as measured by his injuries. Plaintiff does not expressly argue that Defendants are state actors.  Defendant Carson is a

13

registered nurse who was employed by a hospital.  Defendant Orner is a private medical doctor.  Defendant Callanan is a private law enforcement consultant.  Plaintiff does not allege facts to show that any of the Defendants were public actors or acted for a public purpose under the color of state law.

>          a.    **There Is No State Action By Defendants as Private Individuals**

The United States Supreme Court recognizes that an individual's conduct is equivalent to government action if there is a nexus between the State and the action such that "seemingly private behavior may be fairly treated as that of the State itself."  *Single Moms, Inc. v. Mont. Power Co.*, 331 F.3d 742, 747 (9th Cir. 2003)(citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).)  The Supreme Court has identified four factors that influence a finding of state action by a private individual:

> (1)    The government compelled the action using its coercive power, or significant overt or covert encouragement.  *Single Moms, Inc.* 331 F.3d at 747. (*citing Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982));

> (2)    The government and the private actor wilfully participated in joint activity.  *Id.* (*citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982));

> (3)    The government controlled a nominally private actor.  *Id.* (*citing Pennsylvania v. Bd. of Dir. of City Trusts*, 353 U.S. 230, 231 (1957)); or

> (4)    The government delegated a public function to the private actor.  *Id.* (*citing Atkins*, 487 U.S. at 56).

14

See also *Kirtley v. Rainey*, 326 F.3d 1088, 1094-95 (9th Cir. 2003) (replacing the nominally private actor factor with the *Brentwood* nexus factor: seemingly private behavior that may be fairly considered state action).

It is unclear from the complaint and the facts alleged do not demonstrate what factor Plaintiff claims applies.  Plaintiff's "state action" argument relies entirely on the case of *Gonzalez v. Spencer*, 336 F.3d 832 (9th Cir. 2003).  In *Gonzalez,* defendant, an attorney was hired to defend Los Angeles County in an underlying civil rights suit brought by plaintiff.  *Id.* at 834.  Defendant accessed plaintiff's juvenile court file without notifying him and without obtaining authorization from the juvenile court.  *Id.*  Defendant then used the confidential records from the file to cross-examine plaintiff during his deposition in the underlying action.  *Id.*  Plaintiff brought suit against defendant, her law firm, and the county for accessing and using his juvenile court file without authorization, alleging a violation of his Fourth and Fourteenth Amendment rights.  *Id.*  The court found that defendant acted under color of state law.  *Id.*  She was retained to represent state entities and their employees in litigation.  *Id.*  She inspected plaintiff's file in the course of that representation, and used her status to gain access to the file.  *Id.*  Her role was analogous to that of a state prosecutor rather than a public defender, because she acted on behalf of the state rather than as its adversary.  *Id.*  The court further reasoned that defendant was not entitled to qualified immunity.  *Id.* at 835.  She did not point to a special reason significantly favoring an extension of government immunity

15

to private parties in her position.

Plaintiff argues that just as a person must first invoke California's statutory procedure for accessing someone's juvenile records, so too must a person comply with state and federal law before accessing or distributing a person's confidential health information.  In the abstract, this assertion has some coherence, but not in the context of ongoing litigation in which such privileges are waived by the nature of the claims Plaintiff asserts. Plaintiff claims that Kern Deputy County Counsel Andrew Thomson ("Thomson"), in his role as the Kern County's counsel, solicited Carson to make her disclosures and arranged the telephone conversations involving the three defendants. According to Plaintiff, Thomson knew that such disclosure was in violation of federal and state law.  Plaintiff argues that since Thomson was acting under state law when he arranged for Carson's wrongful disclosures to Orner and Callanan, defendants have also acted under color of state law.[2]

Contrary to *Gonzalez,* there is no allegation in this case that the named Defendants used their position to gain access to Plaintiff's file.  Nor does Thompson or any other public official direct their activities.  While Plaintiff alleges that Thomson as Kern County counsel solicited Carson to make the disclosures,

_____

[2] Plaintiff cites *Peng v. Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) for the proposition that if "the police condone activities by private parties that they know to be illegal, there exists sufficient evidence of conspiracy between the private parties and the officer."  Plaintiff fails to show how *Peng* applies in this case.  No facts are alleged that Thomson had control or authority over Carson's actions.

16

Plaintiff has not sued Thomson.  Further, to prove a conspiracy,
Plaintiff must show "an agreement or 'meeting of the minds' to
violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423,
441 (9th Cir. 2002) (citations omitted).  Each individual does
not need to know the plan; sharing the common purpose of the
conspiracy is sufficient.  *Id.*  A private individual may be
liable if he conspired with a state actor.  *Id.*  Here, all three
named defendants are private individuals.  Plaintiff has not
alleged a conspiracy between the Defendants and Thomson and
Plaintiff raises these allegations for the first time in his
opposition brief.[3]  In the Ninth Circuit, Plaintiff must present
more than conclusory allegations of conspiracy to survive a
motion to dismiss.  *Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir.
1980).  The alleged conspiracy between Defendants and Thomson, a
state actor, is defeated by the necessary element of 42 U.S.C. §
1983 that state action occur.  The alleged purpose of the
conspiracy, to use disclosed medical data, cannot be wrongful, in
the context of civil litigation.  The conspiracy claim is not
alleged with sufficient specificity.

Defendants' motions to dismiss Plaintiff's 42 U.S.C. § 1983
claim are GRANTED WITH LEAVE TO AMEND.

   iv.  <u>Defendants Affirmative Defense of Absolute Witness
        Immunity</u>

In the alternative, Defendant Callanan and Defendant Orner

_____

[3] An allegation that a private person conspired with a
state official satisfied the requirement that a defendant acted
under color of state authority.  *Franklin*, 201 F.3d at 1100.
However, Plaintiff does not make any allegations of Thomson's
involvement in the alleged conspiracy in the complaint.

raise the defense of absolute witness immunity available in §
1983 suits.  Absolute witness immunity is based on the policy of
protecting the judicial process and is "necessary to assure that
judges, advocates, and witnesses can perform their respective
functions without harassment or intimidation."  *Franklin v. Terr*,
201 F.3d 1098, 1100 (9th Cir. 2000).  "[A] witness's apprehension
of subsequent damages liability might induce two forms of self
censorship.  First, witnesses might be reluctant to come forward
to testify.  And once a witness is on the stand, his testimony
might be distorted by the fear of subsequent liability."  *Id.*
"Any other holding would eviscerate absolute immunity since a
witness rarely prepares her testimony on her own."  *Id.* at 1101-
1102.

Defendants Callanan and Orner argue that Plaintiff's
allegations are all related to conduct they undertook as retained
testifying experts in *Urbina I.*  According to Defendants,
absolute litigation immunity exists to ensure that expert
witnesses can render testimony without harassment or intimidation
and that they are absolutely immune from liability as to
Plaintiff's claims.

In support of their argument, Defendants rely on *Franklin*,
which confronted whether a witness had absolute immunity from
liability for civil damages under § 1983 for conspiring to
present her own and another witness' perjured testimony at trial.
*Franklin*, 201 F.3d at 1100.  *Franklin* held that when a witness'
alleged conspiratorial behavior is inextricably tied to her
testimony, the witness was immune from damages under § 1983.  *Id.*
at 1102.  *Franklin* addressed allegations by Plaintiff that Terr,

18

a psychiatrist and expert witness in an underlying case, "conspired with others, including the prosecutor, to testify falsely at trial." *Id.* at 1100.  Plaintiff was convicted of first degree murder in the underlying case.  *Id.*  Plaintiff alleged that Terr conspired with a key witness in the underlying case by interviewing her before plaintiff's trial and by then incorporating information obtained from those interviews into Terr's own testimony.  *Id.* at 1102.  The Plaintiff also alleged that Terr provided the key witness with a description of the sort of details that would make the testimony more persuasive, the details of which the witness incorporated into her own testimony. *Id.*  Plaintiff argued that the ostensible purpose of the conspiracy was to ensure that one person's testimony did not contradict the other's testimony.  *Id.*  The court reasoned that Terr's alleged conspiratorial behavior was inextricably tied to her testimony and that she was therefore immune from damages. *Id.*  The court stopped short of deciding whether § 1983 provides a cause of action against a defendant who conspired to present the perjured testimony of another witness but who did not testify as a witness herself.  *Id.*  Allowing Plaintiff to circumvent the witness immunity rule by alleging a conspiracy to present false testimony would undermine the purposes served by granting witnesses absolute immunity from damages liability under § 1983. *Id.* at 1101.

Plaintiff in this case argues that Defendants are not entitled to witness immunity because the federal witness immunity doctrine applies to testimony.  Here, Plaintiff is suing Defendants because they allegedly engaged in wrongful

dissemination of Plaintiff's confidential medical information, rather than for testimony that they gave during trial.  Plaintiff argues that the doctrine, therefore, does not apply.  In support of his argument, Plaintiff cites *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997).  *Harris* involves the issue of qualified immunity for government officials.  *Harris* is inapplicable since qualified immunity is different from the defense of absolute witness immunity in a § 1983 case.

The two experts' conduct was to obtain information to prepare for giving testimony.  The fact gathering function of an expert should not be deterred and is subject to absolute witness immunity.  The role and conduct of testifying experts in preparing for and giving testimony is testimonial in nature. Any medical information that was allegedly shared among Defendants pertains to Plaintiff's physical condition that he has placed at issue.  Without qualified immunity for witness testimony the undesirable effect of chilling experts' willingness to testify would result.

The expert witness defendants are entitled to absolute witness immunity.  The motion to dismiss on this ground is GRANTED WITHOUT LEAVE TO AMEND.

B.   <u>Plaintiff's Failure to State a Claim under 42</u>
     <u>U.S.C. § 1985</u>.

Plaintiff's second and third causes of action allege violations of 42 U.S.C. § 1985(2) and (3) of the and Civil Rights Act of 1871.  A court may dismiss a complaint for (a) lack of a cognizable legal theory; or (b) the pleading of insufficient facts under a cognizable legal theory.  *Robertson v. Dean Witter*

*Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  Plaintiffs' claims under § 1985 fail in both respects.

Section 1985 provides in pertinent part:

> (2) Obstructing justice; intimidating party, witness, or juror
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully...
> or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws....
> (3) Depriving persons of rights or privileges
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving...
> a person or class of persons of the equal protection of the laws...
> or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen...from giving his support or advocacy...in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States....

42 U.S.C. § 1985.

The first part of § 1985(2) prohibits conspiracies to obstruct justice in the federal system, while the second part prohibits conspiracies to obstruct the due course of justice in any state proceeding.  The first part of § 1985(3) prohibits persons from conspiring to deprive any person of his or her constitutional rights, while the second part of § 1985(3) prohibits conspiracies to interfere with the federal voting process.  Section 1985(3) also provides for a private right of action for damages caused by any conspiracy prohibited by § 1985.

To state a claim under the first clause of 42 U.S.C. §1985(2), plaintiff must allege 1) a conspiracy to 2) deter a

21

witness by force, intimidation or threat from attending court or testifying freely in any pending matter 3) which has resulted in injury to plaintiff. *David v. United States* 820 F.2d 1038, 1040 (9th Cir.1987)  Stated another way, plaintiff must allege a conspiracy by defendants to injure a party or witness in his or her person or property because he or she attended federal court or testified in any matter pending in federal court resulting in injury or damages to plaintiff. *Portman,* 995 F.2d at 909.

Plaintiff alleges that defendants Orner and Callanan entered into a conspiracy to "induce or encourage Carson to change or alter her findings so as to exonerate, rather than incriminate, the defendant police officers in Urbina I". (Doc. 8, FAC, ¶ 13) The alleged acts in furtherance of the conspiracy are that

1.   Carson shared information "regarding her August 15, 2003 evaluation of Plaintiff's medical condition

2.   That Defendants shared this information without notice to Plaintiff

3.   As a result, Defendants violated Cal. Civ. Code § 56.10(a) and HIPPA

Plaintiff then alleges that as a result of those acts "plaintiff is *informed and believes* and based thereon alleges that defendants induced Carson to alter and/or modify her August 15, 2003 findings so as to support the Urbina I defendants' litigation position." (FAC, ¶14) The fourth cause of action contends that such acts violate 42 U.S.C. §1985(2) and (3).

Plaintiff has not alleged the existence of a conspiracy to deter a witness by force, intimidation or threat.  He has not alleged a conspiracy to injure a witness in his or her person or property.  He has not alleged any overt acts in furtherance of

22

any such conspiracy.  He has not alleged any injury by virtue of
the alleged conspiracy to "induce" nurse Carson to modify her
medical findings.  Nurse Carson is not alleged to have even
testified in *Urbina I* or to have testified adversely to
Plaintiff.  Plaintiff has failed to state a claim under § 1985(2)

Defendants also argue that Plaintiff's § 1985 claims cannot
stand because Plaintiff is not a member of a protected class.  An
essential requirement for a 1985(3) claim is that there must be
some racial or otherwise class-based "invidious discriminatory
animus" for the conspiracy.  *Bray v. Alexandria Women's Health
Clinic*, 506 U.S. 263, 268-69 (1993)(*citing Griffin v.
Breckenridge*, 403 U.S. 88, 102 (1971)).  Section 1985(3) was not
meant to apply to all tortious conspiracies to deprive the rights
of another. *Id.* Section 1985(3) does not extend beyond race
unless that class can show that the government has determined
that class members "require and warrant special federal
assistance in protecting their civil rights."  *Orin v. Barclay*,
272 F.3d 1207, 1217 n.4 (9th Cir. 2001).

Plaintiff argues that the complaint adequately alleges a §
1985 conspiracy among Defendants "to induce or encourage Carson
to change or alter her findings so as to exonerate, rather than
incriminate, the defendant police officers in *Urbina I*."
According to Plaintiff, Defendants illegally accessed or
disseminated Plaintiff's confidential medical information with
effect of undermining the conclusions stated in Carson's August
15, 2003 report.  However, Plaintiff does not claim that the
dissemination of the medical information was motivated by some
racial or class-based invidiously discriminatory animus.  Also,

23

in the Ninth Circuit, conspiracy claims are subject to a heightened pleading standard.  *Harris*, 126 F.3d at 1195.  "In order to survive a motion to dismiss, plaintiffs alleging a conspiracy to deprive them of their constitutional rights must include in their complaint non-conclusory allegations containing evidence of unlawful intent or face dismissal…" *Id*. The plaintiff must plead with particularity as to "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights." (*Id*. at 1196.)  In the present action, this heightened pleading standard is not satisfied. Plaintiff does not allege a conspiracy to intimidate Plaintiff among the Defendants, that was motivated by racial animus, or that he was deprived of a constitutional right as a result.

    Defendants' motions to dismiss Plaintiff's 42 U.S.C. § 1985 claims are GRANTED WITH PREJUDICE.

C.    <u>Plaintiff's Claim for Relief Under Cal. Civ. Code § 56.10, § 56.35, and § 56.36</u>

    Cal. Civ. Code § 56.10, subdivision (a), provides: "No provider of health care shall disclose medical information regarding a patient of the provider without first obtaining an authorization, except as provided in subdivision (b) or (c)." *Heller v. Norcal Mutual Ins. Co.*, 8 Cal. 4th 30, 38 (Cal. 1994).

    Cal. Civ. Code § 56.35 provides:

    "In addition to any other remedies available at law, a patient whose medical information has been used or

disclosed in violation of Section 56.10[4] or 56.104[5] or 56.20[6] or subdivision (a) of Section 56.26[7] and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorneys' fees not to exceed one thousand dollars ($1,000), and the costs of litigation."

Cal. Civ. Code § 56.36(b) provides:

"In addition to any other remedies available at law, any individual may bring an action against any person or entity who had negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following:

1.   Nominal damages of one thousand dollars ($1,000).   In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages.

2.   The amount of actual damages, if any, sustained by the patient.

Cal. Civ. Code §§ 56.35 and 56.36 provide remedies for violations of Cal. Civ. Code § 56 et seq.,[8] including compensatory damages, punitive damages not to exceed § 3,000, attorney fees not to exceed $1,000, and costs of suit.  *Heller,* 8

---

[4] Cal. Civ. Code § 56.10 applies to health care providers, health care service plans, or healthcare contractors.

[5] Cal. Civ. Code § 56.104 applies to the release of information on outpatient psychotherapy treatment.

[6] Cal. Civ. Code § 56.20 applies to the disclosure of private medical information by employers or their agents.

[7] Cal. Civ. Code § 56.26 applies to persons or entities engaged in the business of furnishing administrative services to programs that provide payment for health care services.

[8] Cal. Civ. Code § 56 et seq. codifies the Confidentiality of Medical Information Act.  *Francies v. Kapla*, 127 Cal. App. 4th 1381, 1383 (Cal. Ct. App. 2005.)

25

Cal. 4th at 38 (Cal. 1994).   Section 56.36 makes a violation a misdemeanor if the patient suffers economic loss or personal injury.  *Id.*  To violate Cal. Civ. Code § 56 et seq., a provider of health care must make an unauthorized, unexcused disclosure of privileged medical information.  *Id.*

i.   <u>Defendant Callanan</u>

Plaintiff does not allege that Defendant Callanan is a health care provider or healthcare contractor.  Plaintiff does not allege that Callanan released any of Plaintiff's medical information in any way or that Callanan serves the capacity of Plaintiff's employer or as furnishing administrative services to programs that provide payment for health care services. Plaintiff fails to allege facts to show that Callanan is in any way liable for damages under Cal. Civ. Code § 56.35.

Defendant's motion to dismiss the first cause of action against Defendant Callanan under Cal. Civ. Code § 56.10(a) is GRANTED WITH PREJUDICE.

ii.  <u>Defendants Carson and Orner</u>

Defendant Carson is a nurse who treated Plaintiff for injuries he alleges in *Urbina I* to have been inflicted by police during his arrest.  Defendant Orner is a medical doctor licensed under the laws of the state of California.  Both Defendants qualify as health care providers for purposes of Cal. Civ. Code § 56.10(a).

Plaintiff argues that he did not give Carson the authorization to make her disclosures to Orner or Callanan, such disclosures were not authorized under any statutory exemption. Defendants Carson, on the other hand, argues that the disclosures

26

of Plaintiff's medical information were allowed under Cal. Civ.
Code § 56.16.   Under § 56.16, "unless there is a specific written
request by the patient to the contrary, nothing... shall be
construed to prevent a provider upon an inquiry concerning a
specific patient, from releasing at its discretion, any of the
following information:  the patient's name, address, age, and
sex, a general description of the reason for the treatment..."
Cal. Civ. Code § 56.16.

Defendant Carson argues that absent a written request by
Plaintiff, she was authorized by the statute to release general
information about Plaintiff's medical condition.   Carson argues
that Callanan and Orner already had the medical screening form in
their possession because it was provided to them by Plaintiff
through discovery.   Plaintiff argues § 56.16 does not apply.
According to Plaintiff the information Carson disclosed "was far
more and of a different quality than one would expect a provider
to disclose."   However, this conclusion is unilluminating and
Plaintiff does not specify what "medical details" were disclosed
or how such disclosure exceeded the scope of his actual consent
and implied consent to provide in civil discovery all information
about his physical, mental and medical conditions before and
after the accident which he placed in issue.   Plaintiff further
argues that Orner is also liable under the theory of conspiracy
to violate Cal. Civ. Code § 56.10.   According to Plaintiff, it is
irrelevant that Orner did not disclose, but only received the
confidential information.

The case of *Garrett v. Young* 109 Cal. App. 4th 1393, 1406
(Cal. Ct. App. 2003) is instructive in determining the

27

sufficiency of allegations in the complaint for violation of Cal. Civ. Code § 56.10.   In *Garrett,* the complaint alleged that respondent disclosed "personal and confidential medical information about appellant, including but not limited to appellant's current health, symptomology, examinations performed, and her planned visits with respondent and other health care providers."   *Garrett*, 109 Cal. App. 4th at 1398.   Here the complaint alleges only that the disclosure involved "information and details regarding Plaintiff's medical condition at the time he was arrested."   Plaintiff concedes that he authorized the disclosure of medical information resulting from his arrest, but argues that Carson disclosed medical information beyond the scope of his consent.   The complaint does not state in general terms the type of medical information that was disclosed or whether that information extends beyond that contemplated by Cal. Civ. Code § 56.16.

    None of their state activity claims survives the absolute witness immunity defense for Callanan and Orner.

    Defendants' motions to dismiss the first and second causes of action against Defendants Carson and Orner under Cal. Civ. Code § 56.10(a) and § 56.36(b) are GRANTED WITH PREJUDICE by reason of absolute witness immunity.

D.   **Defendant's Affirmative Defenses**

    i.   **Waiver**

    Defendant Orner raises the affirmative defense of waiver in response to Plaintiff's first and second causes of action.   Orner argues that even if Plaintiff made sufficient allegations to sustain his first and second causes of action, Plaintiff waived

28

his expectation of privacy regarding his medical condition by placing his physical, mental and medical condition at issue in litigation.  Defendants claim that Plaintiff placed his medical condition at issue by filing the *Urbina I* lawsuit.  Plaintiff then subpoenaed the Medical Screening Form prepared by Defendant Carson and voluntarily provided the form to the *Urbina I* defendants.  In doing so, Defendant claims that Plaintiff waived any right to confidentiality of the information contained in that document for the purposes of a Section 56.10(a) lawsuit.

Plaintiff argues that he does not sue Defendants based on the information he consented to releasing in the Medical Screening Form.  Plaintiff alleges that he is suing over the disclosure between the Defendants of medical information exceeding the scope of the Medical Screening Form.  According to Plaintiff, the Medical Screening Form corroborated Plaintiff's claim that he was repeatedly struck in his ribs.  However, Plaintiff claims that Defendants Orner and Callanan talked to Carson and obtained from her additional information which Defendants then used "to rule out the claim that an officer struck [Plaintiff], fracturing his ribs."

The extent of a privacy interest is dependent on the circumstances.  *Heller*, 8 Cal. 4th at 43.  By placing his physical condition in issue, Plaintiff's expectation of privacy regarding that condition and his related medical records is non-existent.  *see, Id.*  The plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he must not have manifested by his conduct a voluntary consent.  *Hill v. Nat'l*

29

*Collegiate Ath. Ass'n.*, 7 Cal. 4th 1, 26 (Cal. 1994).   If
voluntary consent is present, a defendant's conduct will rarely
be deemed "highly offensive to a reasonable person" so as to
justify tort liability.   *Id.*   The party intruded upon, of course,
may consent to the conduct of the intruding party.   *Id.* at 102,
n.15.   In such a case, the former may be said to have "waived"
his right of privacy or the latter may have said to have effected
no intrusion.   *Id.*

      Here Plaintiff has put his medical condition and medical
treatment directly at issue in *Urbina I*, by claiming that he was
subjected to and injured by law enforcement use of excessive
force.   He has waived his expectation to privacy as to the
specific medical records arising out of the alleged injuries.
The entirety of his medical history related to any injuries
claimed to be caused by the officers is a fair subject for
discovery and Plaintiff has no expectation of privacy in these
medical records and information.

      In *Urbina I*, Plaintiff claims the police used excessive
force by striking him repeatedly in the ribs during his arrest
causing him to suffer severe and life threatening injuries,
including fractured ribs and a collapsed lung.   The claim in
*Urbina I*, is based on Plaintiff's medical condition which Carson
evaluated after the incident.   It is Plaintiff who voluntarily
put his medical condition in issue.   By doing so, Plaintiff has
relinquished his expectation of privacy and has waived his right
to confidentiality as to all his medical records, including those
specifically at issue.

1    Defendant also cites *Heller* for the proposition that the
2  medical information here would have inevitably been discovered
3  and, there was no invasion of privacy.  *Heller* concerned the
4  alleged disclosure of Plaintiff's medical information in an
5  underlying medical malpractice action against her treating
6  physician, Dr. Geis.  *Heller*, 8 Cal. 4th at 36.  Dr. Yamaguchi,
7  an expert witness in the underlying medical malpractice
8  litigation, had several private interviews with Defendant's
9  malpractice insurer, Norcal, about Plaintiff's medical condition.
10 *Id.*  Yamaguchi also disclosed Plaintiff's medical records to
11 Norcal.  *Id.*  The court held that there was no invasion of
12 Plaintiff's medical privacy rights because:  1) she put her
13 medical condition at issue and thus waived any privacy right to
14 the medical information related to the medical malpractice case;
15 and 2) the medical information would have been inevitably
16 discovered since Dr. Yamaguchi was an expert witness in the
17 medical malpractice action*.  see Id.* at 1005-1006.  As the
18 defense medical expert Defendant Orner would inevitably have been
19 provided Plaintiff's medical information.  Defendants Orner and
20 Callanan would have inevitably been provided and discovered
21 Plaintiff's medical information.  Defendants assert that Orner
22 and Callanan were hired by the defense as expert witnesses and
23 were scheduled to testify in *Urbina I*.  Defendants also note that
24 Carson's deposition about Plaintiff's medical evaluation had
25 already been taken and all her information about Plaintiff's
26 medical records and condition was in the public domain.  Further,
27 Plaintiff concedes that the information disclosed by Carson would
28 have inevitably been discovered by stating in his opposition that

31

1  the defendants "should have gotten a deposition subpoena" to

2  obtain access to the information.

3      Even if Plaintiff's claims under Cal. Civ. Code § 56.10 et.

4  seq. were pled sufficiently, Plaintiff has waived his privacy

5  rights to the medical information discussed by Defendants.[9]

6  Defendant's motion to dismiss on the ground of waiver is GRANTED

7  WITH PREJUDICE.

8      ii.  **Cal. Civ. Code § 47(b) Witness Immunity**

9

10

---

11     [9] **The case of *Susan S. v. Philip D. Israels*, 55 Cal. App.
   **4th 1290 (Cal. Ct. App. 1997), is instructive in determining when**
12  **a waiver of certain medical information is inapplicable.  The**
   **court found there was no waiver of Susan S.'s mental health**
13  **records because her mental health was not at issue in the**
   **underlying sexual battery case. *Id.* at 1297.  Susan S. brought an**
14  **action against Kevin Keables for sexual battery.  *Id.* at 1293.**
   **In the course of defending Keables, his attorney, Philip Israels,**
15  **served a subpoena duces tecum on Harbour, a mental health**
   **facility, for Susan S.'s mental health records.  *Id.*  Instead of**
16  **sending the documents to the court, they were mistakenly sent to**
   **attorney Israels.  *Id.*  Knowing that the records were private and**
17  **confidential, Israels read them, transmitted them to the defense**
   **psychiatrist and used them in his cross-examination of Susan S.**
18  ***Id.*  The court held that there was no waiver by Susan S. of her**
   **mental health records because, where her mental conditions was**
19  **not at issue, her expectation of privacy in her medical records**
   **was not substantially lowered.  *Id.* at 1297.  Unlike the *Heller***
20  ***case*, Susan S. did not place her mental health at issue by**
   **charging Keables with sexual battery.  *Id.*  That court held that**
21  **the discovery of Susan S.'s mental health records was not**
   **inevitable.  *Id.*  There is nothing inevitable about the discovery**
22  **of a rape victim's mental health records.  *Id.*  Such discovery**
   **requires a careful balancing of the defendant's rights and the**
23  **plaintiff's rights; this balance does not invariably tip in the**
   **favor of the defendant.  *Id.*  The defendant must show good cause**
24  **for discovery of such mental health records.  *Id.* at 1294.  Susan**
   **S. gave no waiver of her mental health records by filing a sexual**
25  **battery case.**

26

27

28

As an alternative defense, Defendants argue that the communications at issue were privileged publications under California Civil Code § 47(b).  California Civil Code § 47(b) provides in pertinent part.

A privileged publication or broadcast is one made:
(a)  In the proper discharge of an official duty.
(b)  In any... judicial proceeding, in any other official proceeding authorized by law, or in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows:
(1) An allegation or averment contained in any pleading or affidavit filed in an action for marital dissolution or legal separation made of or concerning a person by or against whom no affirmative relief is prayed in the action shall not be a privileged publication or broadcast as to the person making the allegation or averment within the meaning of this section unless the pleading is verified or affidavit sworn to, and is made without malice, by one having reasonable and probable cause for believing the truth of the allegation or averment and unless the allegation or averment is material and relevant to the issues in the action.
***
(c)  In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information....

The most relevant portion of section 47 is subsection b, which provides absolute privilege for any "publication or broadcast" made in any judicial proceeding.  California courts have given this privilege an "expansive reach."  *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993).  It extends to any communication that bears "some relation to any ongoing or anticipated lawsuit." *Id*. at 1194.  The privilege also applies to a wide range of causes of action.  The California Supreme Court recognized "the

33

only exception to [the application of section 47(b) to tort suits
has been for malicious prosecution.]" *Id.* The California courts
have applied the privilege to claims of abuse of process, *Pollock*
*v. Univ. of So. Cal.*, 112 Cal. App. 4th 1416 (2003), fraud,
*Carden v. Getzoff*, 190 Cal App. 3d 907 (1987), invasion of
privacy, *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985), and
interference with contract, *Pacific Gas & Elec. Co. v. Bear*
*Stearns & Co.*, 50 Cal. 3d 1118 (1990).

        The privilege is not limited to statements made in the
courtroom, but extends to "any publication required or permitted
by law in the course of a judicial proceeding to achieve the
objects of the litigation, even though the publication is made
outside the courtroom [when] no function of the court or its
officers is involved." *Hagberg v. California Federal Bank* 32
Cal.4th 350, 361 (2004) (citing *Silberg v. Anderson*, 50 Cal. 3d
205, 212). The privilege also applies to "communications with"
'some relation to a proceeding that is ... under serious
consideration;' " to " 'potential court actions;' " and to "
'preliminary conversations and interviews related to contemplated
action,' " and. . . to communications made, prior to the filing
of a complaint, by a person "meeting and discussing" with
potential parties the "merits of the proposed ... lawsuit." *Id.*

        The statutory privilege extends to attorneys, judges,
witnesses, experts, jurors and court personnel. *Mattco Forge,*
*Inc. v. Arthur Young & Co.*, 5 Cal. App. 4th 392, 402 (Cal. Ct.
App. 1992). The privilege is broadly applied to protect most
publications within lawsuits provided there is some connection
between the lawsuit and the publication. Any doubt as to whether

34

the privilege applies is resolved in favor of applying the privilege. *Adams v. Superior Court* 2 Cal.App.4th 521, 529 (1992) The privilege is absolute and bars all species of tort theories, including invasion of privacy. *Silberg,* 50 Cal.3d at 215-216 (1990).[10]

Plaintiff's only reply is that Cal. Civ. Code §47(b) does not apply to criminal publication of information and that such disclosures are not immune from tort liability.  This is nonsense.  Conclusory hyperbole is not a substitute for law. Defendants' conversation or the review of relevant medical information in litigation concerning that very subject by a County hospital employee to experts for the County on subject matters that Plaintiff put in issue and already partially disclosed cannot be criminal and is well within the expansive scope of the privilege.  Plaintiff argues that the alleged ex parte disclosures were criminal under Cal. Civ. Code § 56.36. Section 56.36 makes a violation of Cal. Civ. Code § 56.10 a misdemeanor if the patient suffers economic loss or personal injury as a result of the disclosure.  These laws have already been disposed of by the prior analysis. Plaintiff has alleged no

---

[10] *Heller* is instructive.  There, the dispute was whether the unauthorized ex parte discussions that occurred during the discovery phase of a medical malpractice action between a nonparty treating physician and the defendant physician's malpractice insurer, regarding the litigant patient's medical condition, violated Cal. Civ. Code § 56, et seq.  The court ruled that Plaintiff did not sufficiently allege an invasion of a protectable privacy interest and that Cal. Civ. Code § 47(b) applied to the common law tort ex parte communications, preventing recovery for the causes of action.  *Heller*, 8 Cal. 4th at 45.

facts to show that Defendants have violated Cal. Civ. Code §
56.10 and has not alleged he suffered economic loss or personal
injury as a result.

One of the seminal issues in *Urbina I* is Plaintiff's medical
condition at the time of his arrest and any treatment
administered.  Here, it is undisputed that Defendant Carson
treated Plaintiff for injuries he alleges were inflicted by
arresting officers.  It is also undisputed that Plaintiff
subpoenaed the Medical Screening Form prepared by Defendant
Carson and provided the document to the defense as part of
discovery.  Plaintiff well knows that he has placed the entirety
of his present and pre-existing physical and mental condition in
issue.  If he chooses to invoke privilege to block medical
discovery, he will not be permitted to offer at trial any
withheld information and invites a potential negative inference
by invocation of the privilege if comment to the jury on exercise
of the privilege is permitted.  Defendants admit that Callanan
and Orner, who are retained as expert witnesses in *Urbina I*, had
an ex parte conversation with Defendant Carson about Plaintiff's
medical condition, existing at the time of his arrest.  Since
Plaintiff's injuries, physical, mental, and medical conditions
are all at issue in *Urbina I*, the conversation between Defendants
are directly related to the litigation and the experts'
preparation for giving testimony at trial.  There was no other
conceivable reason for the experts to communicate with Carson
about Plaintiff.

The privilege itself is broad and applies to "any
communication... that bears some relation to a proceeding,"

including "preliminary conversations and interviews related to contemplated action." *Hagberg v. California Federal Bank* 32 Cal.4th 350, 361 (2004). Based on this law, if the communication between Defendants had some connection to the lawsuit, the privilege applies.

Defendants' motions to dismiss on the ground of litigation privilege are GRANTED WITH PREJUDICE.

iii. <u>Judicial Estoppel</u>

Defendant Orner also argues that Plaintiff's Cal. Civ. Code § 56.10 claims are barred by the doctrine of judicial estoppel. Judicial estoppel precludes a party from taking inconsistent positions under certain circumstances.

As explained in *Wagner v. Professional Eng'rs in Cal. Gov't,* 354 F.3d 1036, 1044 (9th Cir.2004):

> 'Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.' ... Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.' ... Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion.

In determining whether to apply judicial estoppel, a court may consider (1) whether the party's later position was inconsistent with its initial position; (2) whether the party successfully persuaded the court to accept its earlier position; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped from asserting the inconsistent position. *New Hampshire v. Maine*, 532

37

U.S. 742, 750-751 (2001).  The Ninth Circuit restricts the application of judicial estoppel "to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 783 (9th Cir.2001).

Defendant Orner argues that Plaintiff used the discovery process available in *Urbina I* to set a "litigation trap" for the Defendants.  According to Orner, Plaintiff "baited" the Defendants and their witnesses by voluntarily providing the document to defense counsel so that he could later claim that the information on the Medical Screening Form was confidential.  However, Defendant Orner misunderstands Plaintiff's position.  Plaintiff does not take a clearly inconsistent position in this case from *Urbina I*.  Plaintiff argues that Defendants' disclosures went beyond the scope of the Medical Screening Form.  There are no facts to show that an inconsistent position was adopted in some manner by the court in the underlying litigation.  There is no evidence that Plaintiff, in filing this litigation, is "playing fast and loose" with the court.  There is no indication that Plaintiff, in filing this litigation, was seeking to derive an unfair advantage or impose an unfair detriment on the opposing party.

Plaintiff does not address this affirmative defense in his moving papers.  Further Defendants, in their discussion, apply the four factor test as applied by California State Courts, rather than the Ninth Circuit Guidelines:

> "The Doctrine is most appropriate when 1. a party has taken two totally inconsistent positions, 2. the positions were taken in a judicial or qusi-judicial

1   proceedings, 3. the first position was adopted or
    accepted as true and 4. the first position was not
2   taken as a result, ignorance, fraud, or mistake. *MW*
    *Erectors, Inc. v. Niederhauser Ornamental & Metal Works*
3   *Co., Inc.,* 36 Cal. 4th 412, 422 (2005).

4   The California factors are not materially different from the

5   Ninth Circuit guidelines.  Regardless of what law is used,

6   judicial estoppel does not apply in this case.  However, since

7   the causes of action were dismissed, the judicial estoppel

8   doctrine issue is moot.

9       Defendant's motions to dismiss on ground of judicial

10  estoppel are DENIED AS MOOT.

11               5.   <u>MOTION TO STRIKE</u>

12      In the alternative, Defendants move to strike the first

13  causes and second causes of action under California's "Anti-

14  SLAPP" statute, California Code of Civil Procedure Section

15  425.16, which provides in relevant part:

16      A cause of action against a person <u>arising from</u> any act of
        that person in furtherance of the person's right of petition
17      or free speech under the United States or California
        Constitution in connection with a public issue shall be
18      subject to a special motion to strike, unless the court
        determines that the plaintiff has established that there is
19      a probability that the plaintiff will prevail on the claim.

20      ...

21      As used in this section, "act in furtherance of a
        person's right of petition or free speech under the
22      United States or California Constitution in connection
        with a public issue" includes:
23
        (1) any written or oral statement or writing made
24      before a legislative, executive, or judicial
        proceeding, or any other official proceeding authorized
25      by law;

26      (2) any written or oral statement or writing made in
        connection with an issue under consideration or review
27      by a legislative, executive, or judicial body, or any
        other official proceeding authorized by law;

28

39

1          (3) any written or oral statement or writing made in a
           place open to the public or a public forum in
2          connection with an issue of public interest;

3          (4) or any other conduct in furtherance of the exercise
           of the constitutional right of petition or the
4          constitutional right of free speech in connection with
           a public issue or an issue of public interest.
5

6  Cal. Code Civ. Pro. § 425.16(b)(1) & (e)(emphasis added).

7       A court considering a motion to strike under the Anti-SLAPP

8  statute must engage in a two-part inquiry.  First, a <u>defendant</u>

9  must make an initial *prima facie* showing that the plaintiff's

10 suit "aris[es] from" activity protected by the Anti-SLAPP

11 statute.  *Brill Media Co. v. TCW Group, Inc.,* 132 Cal. App. 4th

12 324, 329 (2005); Cal. Code Civ. Pro. § 425.16(b)(1).  In

13 performing this analysis, the California Supreme Court has

14 stressed, "the critical point is whether the plaintiff's cause of

15 action itself was *based on* an act in furtherance of the

16 defendant's right of petition or free speech." *City of Cotati v.*

17 *Cashman*, 29 Cal. 4th 69, 78 (2002) (emphasis in original).

18 If the defendant is able to make this threshold showing, the

19 burden shifts to the plaintiff to demonstrate a probability of

20 prevailing on the challenged claims.  In practice, a plaintiff

21 must show that the claim is "both legally sufficient and

22 supported by a sufficient prima facie showing of facts to sustain

23 a favorable judgment if the evidence submitted by the plaintiff

24 is credited." *Jarrow Formulas, Inc. v. LaMarche,* 31 Cal. 4th

25 728, 744 (2003).  Claims for which Plaintiff is able to satisfy

26

27

28

**40**

1  this burden are "not subject to being stricken as a SLAPP."

2  *Id.*[11]

3  **A.   Defendants Have Met Their Burden of Showing the Allegations**
       **Demonstrate that Defendants Engaged in the Type of Free**
4      **Speech Activity Contemplated by § 425.16**

5          Defendants each bring a special motion to strike Plaintiff's

6  claims brought under Cal. Civ. Code § 56.10, § 56.35, § 56.36.

7  Plaintiff's complaint alleges the following:

8              1.   Defendant Orner consented to be retained
               as an expert to testify on behalf of the
9              defendants in *Urbina I*

10             2.   Defendant Orner entered into a conspiracy
               with expert witness and co-defendant Callanan
11             to induce or encourage co-defendant Carson to
               change or alter her medical findings in
12             connection with the issues contested in
               *Urbina I*
13
               3.   In furtherance of this conspiracy, Orner
14             communicated with Carson via telephone,
               interviewing and obtaining from Carson
15             information regarding her August 15, 2003
               evaluation of Plaintiff's medical condition
16             without Plaintiff's consent

17             4.   Defendant Callanan induced Defendant
               Carson to modify her August 15, 2003 findings
18             so as to support the position of the *Urbina I*
               defendants.
19
               5. This alleged conduct constitutes a
20             conspiracy to violate Cal. Civ. Code § 56.10
               and Plaintiff is entitled to recover damages
21             pursuant to Cal. Civ. Code § 56.35 and §
               56.36.
22

23

24
_____

25        [11]**Although the anti-SLAPP statute applies to state law
   claims brought in federal court, it does not apply to federal
26 question claims because such application would frustrate
   substantive federal rights. *See Smith v. California Dept. of
27 Corrections,* 2006 WL 3518257 (E.D.Cal.2006) and cases cited
   therein.**
28

1    A cause of action does not "arise from" protected activity

2 simply because it is filed after protected activity took place.

3 *Cashman*, 29 Cal. 4th at 76-77.  Nor does the fact "[t]hat a cause

4 of action arguably may have been triggered by protected activity"

5 necessarily mean that it arises from such activity.  *Cashman*, 29

6 Cal. 4th at 78.  The trial court must instead focus on the

7 substance of the plaintiff's lawsuit in analyzing the first prong

8 of a special motion to strike.  *Scott v. Metabolife Intern.,*

9 *Inc.*, 115 Cal. App. 4th 404, 413-414 (2004); *see also Cashman,* 29

10 Cal. 4th at 78.  In performing this analysis, the California

11 Supreme Court has stressed, "the critical point is whether the

12 plaintiff's cause of action itself was *based on* an act in

13 furtherance of the defendant's right of petition or free speech."

14 *Cashman,* 29 Cal. 4th at 78 (emphasis in original).  In other

15 words, "the defendant's act underlying the plaintiff's cause of

16 action must *itself* have been an act in furtherance of the right

17 of petition or free speech."  *Id.*

18    Plaintiff's state law claims in this case seek to chill, if

19 not wholly exclude, the testimony of Defendant expert witnesses,

20 who have knowledge of Plaintiff's medical information.

21 Plaintiff's medical condition on August 15, 2003 is an issue

22 "under consideration or review by a judicial body."  It is a

23 primary issue in *Urbina I*.  Cal. Civ. P. §425.16(e)(2).  The

24 actions complained of by the Plaintiff are oral statements made

25 in connection with that issue because Orner and Callanan

26 contacted Carson in their capacities as expert witnesses seeking

27 information directly related to *Urbina I* litigation.  Standing

28

1  alone the allegations demonstrate that Defendants engaged in the

2  type of free speech activity contemplated by § 425.16.

3  **B.   Plaintiff Has Failed to Meet His Burden of Showing a**
   **Probability of Success on the Merits for His State Law**

4  **Claims**

5       Plaintiff's state law causes of action have been dismissed

6  for failure to state a claim.  Plaintiff has failed to allege

7  facts to show that Defendants were in any way liable for damages

8  under Cal. Civ. Code § 56.10, § 56.35, and § 56.36.  According to

9  Cal. Civ. Code § 56.16, absent a written request by Plaintiff,

10 Defendant Carson was authorized to release general information

11 about Plaintiff's medical condition.  Defendants Callanan and

12 Orner already had the medical screening form in their possession

13 because it was provided to them by Plaintiff through discovery.

14 Plaintiff failed to provide any evidence or information that the

15 medical information shared between Defendants extended beyond the

16 type of information contemplated by Cal. Civ. Code § 56.16.

17      However, even if Plaintiff had sufficiently established that

18 Defendants violated Cal. Civ. Code § 56.10, § 56.35, and § 56.36,

19 by putting his medical condition at issue in *Urbina I*, either the

20 doctrine of waiver or under Cal. Civ. Code § 47(b) witness

21 immunity would prevent Plaintiff from succeeding on his state law

22 claims.

23      Since Plaintiff's state law claims are dismissed with

24 prejudice for failure to state a claim, Defendants' motions to

25 strike claims brought under Cal Civ. Code § 56.10(a) and §

26 56.36(b) are DENIED AS MOOT.

27                         CONCLUSION

28      For the reasons set forth above,

                              43

1       **(1) Defendants' Callanan, Carson and Orner motions to**
2  **dismiss Plaintiff's third cause of action for violation of the**
3  **Fourth Amendment and for denial of due process under 42 U.S.C. §**
4  **1983 are GRANTED WITH LEAVE TO AMEND.**

5       **(2) Defendants' Callanan, Carson and Orner motions to**
6  **dismiss Plaintiff's fourth cause of action for conspiracy to**
7  **obstruct justice under 42 U.S.C. § 1985 are GRANTED WITH**
8  **PREJUDICE.**

9       **(3) Defendant Callanan's motion to dismiss Plaintiff's first**
10 **cause of action for conspiracy to violate under Cal. Civ. Code §§**
11 **56.10(a), 56.35 and 56.36(b) is GRANTED WITH PREJUDICE.**

12      **(4) Defendants' Carson and Orner motions to dismiss**
13 **Plaintiff's first and second causes of action for conspiracy to**
14 **violate and wrongful disclosure under Cal. Civ. Code §§ 56.10(a),**
15 **56.35 and 56.36(b) are GRANTED WITH PREJUDICE.**

16      **(5) Defendants' Carson, Callanan and Orner Motions to strike**
17 **claims brought under Cal Civ. Code §§ 56.10, 56.35, and 56.36 are**
18 **DENIED AS MOOT.**

19      **(6) Counsel for Defendants shall prepare and lodge a form of**
20 **order that reflects the specific rulings on each issue addressed**
21 **by this decision within five (5) days following the date of**
22 **service of this decision.**

23              IT IS SO ORDERED.

Dated:   __September 25, 2007__                __/s/ Oliver W. Wanger__
                                              UNITED STATES DISTRICT JUDGE
25
26
27
28